1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

11  JOSSIE RAMOS, et al.,                    ) Case No. ED CV 12-1089-BRO (SPx)
                                            )
12              Plaintiffs,                  )
                                            )
13        v.                                 ) **REPORT AND**
                                            ) **RECOMMENDATION OF UNITED**
14  GARY SWATZELL, et al.,                   ) **STATES MAGISTRATE JUDGE**
                                            ) **ON MOTION FOR SANCTIONS**
15              Defendants.                  )
                                            )
16  _____ )

17

18        This Report and Recommendation is submitted to the Honorable Beverly

19  Reid O'Connell, United States District Judge, pursuant to the provisions of 28

20  U.S.C. § 636 and General Order 05-07 of the United States District Court for the

21  Central District of California.

22                                  **I.**

23                            **INTRODUCTION**

24        On March 21, 2017, plaintiffs filed a Motion for Sanctions (docket no. 182

25  ("Mtn.")) against defendant Guillermo Garcia, the California Institution for

26  Women ("CIW"), the California Department of Corrections and Rehabilitation

27  ("CDCR"), and their counsel, based on their alleged misrepresentations of facts

28

1  and obstructive tactics throughout the course of this litigation.  Plaintiffs' positions

2  are supported by the declaration of Jenny Huang ("Huang Decl.") and exhibits

3  thereto.  On April 25, 2017, defendants filed an opposition to plaintiffs' motion.

4  Docket no. 191 ("Opp.").  Defendants' positions are supported by the declarations

5  of Michelle Stephens ("Stephens Decl."), David F. Taglienti ("Taglienti Decl."),

6  Guillermo Garcia ("Garcia Decl."), Douglas E. Baxter ("Baxter Decl.") and

7  exhibits thereto.  On May 2, 2017, plaintiffs filed a reply memorandum in support

8  of their motion, which was again supported by the declaration of Jenny Huang

9  ("Huang Reply Decl.") and exhibits thereto.  Docket no. 195.  The court held a

10  hearing on the motion on May 16, 2017.

11       Having considered the parties' moving and opposing papers and other

12  records in this case, as well as the statements and arguments made during the

13  hearing, for the reasons that follow, the court now recommends that plaintiffs'

14  Motion for Sanctions be granted in part.  Because the court recommends an

15  adverse inference instruction be given and that is a matter for the trial judge, the

16  Magistrate Judge submits this Report and Recommendation to the assigned District

17  Judge.  Related matters concerning the conduct of discovery are separately

18  addressed in a minute order being concurrently filed.

19                                 **II.**

20                          **BACKGROUND**

21       Plaintiffs Jossie Ramos and Melissa Ortiz filed this federal civil rights action

22  in July 2012.  A related state court action filed in February 2012 was stayed from

23  September 2012 until August 2015.

24  **A.    Earlier Discovery Requests**

25       On June 4, 2013, plaintiffs propounded a request for production of

26  documents seeking defendant Guillermo Garcia's personnel file.  Huang Decl. ¶ 6.

27  Garcia, the former Warden of CIW, had left the position on February 28, 2013.

28

2

1    Garcia responded by stating, inter alia, he had conducted a diligent search but was
2    unable to locate any such documents, and he had neither the authority to request
3    such documents nor did he have the file in his possession, custody, or control.
4    Huang Decl., Ex. A at 4-5.

5          In November 2013, plaintiffs filed a motion to compel, inter alia, discovery
6    of Garcia's personnel file.  Docket no. 70.  Garcia reiterated to this court that he
7    did not possess responsive documents.  *Id.* at 32.[1]  The court denied plaintiffs'
8    motion as it related to personnel files and directed plaintiffs to subpoena the files
9    from CDCR or the entity in possession of the files.  Docket no. 72 at 3-4.

10         Plaintiff served subpoenas for documents on CIW and CDCR on February
11   24, 2014 and April 29, 2014, respectively.  Docket no. 80 ¶ 3.  CIW and CDCR
12   served written responses to plaintiffs' subpoenas, stating their refusal to produce
13   Garcia's personnel file on the basis of privacy objections and official information
14   privilege.  Docket no. 80-4 at 3; Docket no. 80-12 at 2; Docket no. 80-13.

15   **B.    Destruction of Garcia's Personnel File**

16         On June 5, 2014, defense counsel David Taglienti informed plaintiffs that
17   Garcia's personnel file was "inadvertently misplaced/destroyed during a
18   reorganization project" at CIW and could not be reproduced.  Docket no. 80-19.  In
19   July 2014, Rebecca Denton, the Custodian of Records at CIW, explained that
20   Garcia's personnel file was selected for audit in February 2014, and it was
21   accidentally shredded in March 2014.  Docket no. 80 ¶¶ 40-44.

22         A litigation hold had been issued by CDCR's Office of Legal Affairs to the
23   Litigation Coordinator of CIW on June 17, 2011.  Huang Decl., Sealed Ex. R.
24   Rodger Moore, who was the Litigation Coordinator of CIW for about two years
25   starting in approximately May 2013, testified he learned of the litigation hold in

26

27         [1]  Citations to pages of documents on the court's docket in this case are to the
28   page numbers supplied by the court's electronic filing system.

3

this case when he became Litigation Coordinator but does not recall seeing a "hard copy file" indicating the hold.  Huang Decl., Ex. E at 5, 11, 17, 19.  Denton testified that when a litigation hold is in place there should be a litigation hold memorandum in front of the official personnel file, but she does not recall seeing a litigation hold memorandum for this case and she in fact was not aware there was a litigation hold in this case.  *Id.*, Ex. O at 13-15.

C.   **August 6, 2014 Court Order**

Plaintiffs moved to compel CIW and CDCR to comply with the subpoenas in July 2014.  In response, defendants again represented that Garcia's personnel file was "inadvertently misplaced or destroyed" in March 2014.  Docket no. 79 at 23.  The subpoena to CDCR included a request (request number 2) for the supervisory work files for defendants Swatzell, Horigan, Llamas, Flores, Maldonado, Garcia, and Cate.  Docket no. 80-21 at 6.  Defendants represented to the court that "the documents that exist, on information and belief, have been provided."  Docket no. 79 at 24.

On August 6, 2014, the court ordered CIW and CDCR to produce documents, including all documents from the personnel files for the named defendants that fell within seven categories agreed upon by the parties, and all documents from the supervisory files for the named defendants.  Docket no. 86 at 4-5, 9.  CIW and CDCR were also ordered to serve supplemental, verified responses affirming that a diligent search was conducted and all responsive documents were produced.  *Id.* at 5-6, 9.  The court warned CIW and CDCR that further discovery obstruction may result in the imposition of sanctions.  *Id.* at 8-9.

Following the court's order, CIW and CDCR served supplemental responses representing that all responsive documents from defendants' personnel and supervisory files will be or have been produced.  Huang Decl., Ex. B at 2, Ex. C at 2.  CDCR produced personnel documents for all of the named defendants, except

4

1  for Garcia.  Huang Decl. ¶ 23.

2  **D.**  **Statements Made Before March 2015 Regarding Garcia's Separation**

3      **from CIW**

4      On November 13, 2014, plaintiffs deposed Garcia in this case.  Garcia

5  testified that he retired from his position as Warden at CIW.  Huang Decl., Ex. D at

6  2-3.  In response to a question by plaintiffs' counsel about the reason for his

7  separation, Garcia answered, "I retired."  *Id.* at 6.  Plaintiffs' counsel asked Garcia

8  whether it was "a voluntary departure from CIW," to which Garcia replied:  "Well,

9  it was a voluntary retirement.  It was not a voluntary removal from the office."  *Id.*

10  at 7.  Garcia also denied that he possessed any portion of his personnel file.  *Id.* at

11  14.

12      In January 2015, defendants filed a motion for summary judgment.  Docket

13  no. 112.  In support of the motion, Garcia declared he retired from his position as

14  Warden of CIW in March 2013.  Docket no. 112-5 ¶ 1.  Defendants' brief in

15  support of the motion also stated, "Guillermo Garcia retired as Warden at CIW in

16  March 2013."  Docket no. 112-1 at 15.

17      The court granted in part and denied in part the motion for summary

18  judgment.  Defendants appealed the district court's denial, and plaintiffs agreed to

19  stay the case until the appeal was resolved.  Docket no. 140.  The Ninth Circuit

20  affirmed the district court's decision on October 12, 2016.  Docket no. 159.

21  **E.**  **State Action Discovery Including Production of Dickinson Letter**

22      Meanwhile, in August 2015, the stay in the related state court action was

23  lifted.  Huang Decl. ¶ 33.  During discovery in the state action, plaintiffs found

24  evidence that Garcia was involuntarily terminated as Warden of CIW.  *Id.* ¶¶ 34-

25  50.  On April 7, 2016, Rodger Moore testified that Garcia's departure from CIW

26  was sudden.  Huang Decl., Ex. E at 7.  On June 24, 2016, CIW Lieutenant Frank

27  Esqueda testified it was his understanding Garcia was involuntarily terminated

28                                    5

1   from CIW, and he was told one of the reasons for Garcia's termination was his

2   mishandling of sexual misconduct cases.  *Id.*, Ex. F at 15-17.

3          In response to a motion filed by plaintiffs in state court in April 2016, on

4   July 19, 2016, defendants produced documents from the supervisory files of

5   Maldonado, Garcia, and Horigan.  Huang Reply Decl. ¶¶13-14, Sealed Ex. FF.

6   The documents produced included just one from Garcia's file, a memorandum sent

7   from Garcia to Kathleen Dickinson on February 28, 2013 announcing his decision

8   to retire.  *Id.*, Sealed Ex. FF at 22.  CDCR had not previously produced any

9   documents from Garcia's supervisory file, and has produced none in discovery in

10  this federal case.  Huang Decl. ¶ 24; Huang Reply Decl. ¶ 15.

11         On August 9, 2016, CDCR produced Garcia's former supervisor Jay Virbel

12  for deposition as the person most knowledgeable about Garcia's termination.

13  Huang Decl. ¶¶ 48-50, Ex. M at 2.  Virbel became Associate Director in September

14  2012 and supervised Garcia for about five months, until Garcia retired.  *Id.*, Ex. M

15  at 3.  Virbel testified he informed Garcia that he would no longer serve as Warden

16  at the pleasure of the Governor, and no other reason was provided because Garcia's

17  position was that of an appointee.  Huang Decl., Sealed Ex. T at 2-3, 7.  Virbel

18  testified he was not given a reason for Garcia's termination, and he was not aware

19  of Garcia's departure being related to his handling of sexual misconduct

20  allegations at CIW.  *Id.* at 4, 12.  When repeatedly asked if he had any idea why

21  Garcia was terminated as Warden, Virbel did not actually answer the question, but

22  instead reiterated that no reason was given.  *Id.* at 5-6.  Virbel further stated he

23  understood that Garcia elected to retire before his effective removal date.  *Id.* at 10-

24  11.  Virbel explained that Garcia was not forced to retire, as he could have

25  continued to serve in some position, but that he was to be involuntarily removed as

26  Warden.  *Id.* at 13-15.

27         Virbel also testified that he kept a supervisory file for Garcia in his desk

28

drawer.  *Id.* at 15-16.  He said he would keep a supervisory file on a warden if there was something like an investigation request, but he had nothing like that for Garcia.  *Id.* at 16-17.  He indicated "the February 28th" document was in his supervisory file on Garcia.[2]  *Id.* at 16.  He said he does not believe he inherited a supervisory file on Garcia from the prior Associate Director.  *Id.* at 17.

Plaintiffs served interrogatories in the state action on defendant Garcia asking, inter alia, whether he was terminated from CIW voluntarily or involuntarily.  Huang Decl., Ex. G at 4.  In responses verified on August 31, 2016 by Garcia, he stated, "I voluntarily retired from CDCR before my exempt appointment as warden was terminated."  *Id.*, Ex. H at 2.

Plaintiffs also served document requests on Garcia requesting, inter alia, documents regarding his termination from employment at CIW.  Huang Decl. ¶ 46.  On September 2, 2016, Garcia produced documents concerning his termination as CIW Warden.  *Id.*  These included a letter dated February 28, 2013 from Kathleen Dickinson ("Dickinson Letter"), the former Director of the Division of Adult Institutions for CDCR, which notified Garcia his appointment as CIW Warden would be terminated at the close of business on February 28, 2013.  *Id.*, Sealed Ex. Q.  The letter indicated a copy was placed in Garcia's personnel file.  *Id.*  Garcia also produced a March 12, 2013 letter he wrote to Governor Brown stating he had retired from state service but complaining that he was unjustly terminated as CIW

---

[2]   Virbel specifically refers to the document as "the document you have at 140, the February 28th."  Huang Decl., Sealed Ex. T at 16.  It is not clear to the court which document this is.  Because plaintiffs indicate they first received the February 28, 2013 Dickinson Letter discussed below in September 2016 (*see* Huang Decl. ¶ 46), the court assumes Virbel was referring to the February 28, 2013 memorandum from Garcia's supervisory file discussed above, which was produced in July 2016.  Yet Virbel also testified that if he were to give someone a formal letter he would keep that in their file (Huang Decl., Sealed Ex. T at 16), which suggests the Dickinson Letter Virbel gave Garcia on February 27, 2013 should have been in Garcia's supervisory file.

1  Warden, and the form Garcia used to appeal his termination as Warden to the State

2  Personnel Board in which he asserted this termination effectively forced him to

3  retire.  Huang Decl. ¶ 46, Exs. K, L.

4        On October 14, 2016, plaintiffs deposed Garcia in the state case.  Garcia

5  testified that Virbel notified him at a February 27, 2013 meeting that he was going

6  to be terminated from his appointment as Warden, with Virbel giving him the

7  Dickinson Letter at that meeting.  Huang Decl., Ex. N at 3.  Garcia acknowledged

8  that because the Dickinson Letter indicated it was being copied to his personnel

9  file, he understood it would be going in his file.  *Id.* at 8.  Garcia elected to retire

10  before he was terminated, and testified that his decision to retire was voluntary.  *Id.*

11  at 3, 11, 18-19.

12  **F.    Garcia's Current Statements Regarding His Separation from CIW and**

13        **Production of the Dickinson Letter**

14        Garcia submitted a declaration in opposition to the instant sanctions motion,

15  in which he describes being notified of his impending termination as Warden and

16  decision to instead retire much as he did at his October 2016 deposition.  Garcia

17  Decl. ¶¶ 4-5.  Garcia states that because he was allowed to retire voluntarily, he

18  believes his testimony at the November 2014 deposition was true and correct.  *Id.*

19  ¶ 6.  He notes that when he appealed to the State Personnel Board to challenge his

20  termination as Warden, the State asked him to withdraw his appeal because his

21  retirement rendered the appeal moot.  *Id.*; *see* Taglienti Decl., Ex. R at 39.

22        As for the Dickinson Letter, Garcia states that when he was asked in this

23  case for his personnel file he knew he did not have the file and believed he did not

24  possess any documents from the file.  Garcia Decl. ¶ 2.  Then in 2016, when he

25  was asked for documents relating to whether he had been terminated, he recalled

26  he had kept certain documents, and in the course of looking for those he came

27  across the Dickinson Letter.  *Id.* ¶ 3.  He states he had not previously thought of the

28

document as being part of his personnel file. *Id.*

## III.

## DISCUSSION

Under the Federal Rules of Civil Procedure and in accord with its inherent powers, "the court may impose broad discovery sanctions for failure to obey a court order that compels discovery, up to and including 'dismissing the action or proceeding in whole or in part.'" *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1053 (S.D. Cal. 2015) (quoting Fed. R. Civ. P. 37(b)(2)(A)(v)); *see Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (internal quotation marks and citation omitted).  The Ninth Circuit has "recognized as part of a district court's inherent powers the 'broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial.'" *Unigard Sec. Ins. Co.*, 982 F.2d at 368 (citation omitted).

Plaintiffs now move the court to sanction defendants for the destruction of Garcia's personnel file, Garcia's alleged concealment or misrepresentation of his involuntary termination as Warden of CIW, and the alleged concealment or misrepresentation of the status or existence of Garcia's supervisory and personnel file documents.

**A.   Defendants' Conduct Warrants Sanctions**

The first question before the court is whether defendants' conduct warrants any sanction at all.  The court concludes that sanctions are warranted based on CIW/CDCR's failure to take appropriate measures to preserve, locate, and timely produce information responsive to plaintiffs' discovery requests, and Garcia's failure to conduct an adequate initial search for portions of his personnel file.

1          **1.      Destruction of Garcia's Personnel File**

2          The court first addresses whether the apparent destruction of Garcia's

3  personnel file was sanctionable spoliation of evidence.

4          **a.      Litigation Hold**

5          "Although the Ninth Circuit has not precisely defined when the duty to

6  preserve is triggered, trial courts in this Circuit generally agree [it is triggered] '[a]s

7  soon as a potential claim is identified.'" *Apple Inc. v. Samsung Elecs. Co., Ltd.*,

8  888 F. Supp. 2d 976, 991 (N.D. Cal. 2012) (quoting *In re Napster, Inc. Copyright*

9  *Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006) (other citations omitted);

10  *accord Compass Bank*, 104 F. Supp. 3d at 1051 (citation omitted).

11          A party must preserve evidence it knows or should know is relevant to a

12          claim or defense of any party, or that may lead to the discovery of relevant

13          evidence.  The duty to preserve arises not only during litigation, but also

14          extends to the period before litigation when a party should reasonably know

15          that evidence may be relevant to anticipated litigation.

16  *Id.* (internal citations omitted); *see U.S. v. Kitsap Physicians Serv.*, 314 F.3d 995,

17  1001 (9th Cir. 2002) (routine destruction constitutes spoliation where party "had

18  'some notice that the documents were potentially relevant' to the litigation before

19  they were destroyed") (citation omitted).

20          "Once the duty to preserve attaches, a party must suspend any existing

21  policies related to deleting or destroying files and preserve all relevant documents

22  related to the litigation." *Compass Bank*, 104 F. Supp. 3d at 1052 (citations and

23  internal quotation marks omitted).  Making "some efforts" to preserve documents

24  does not meet this obligation; implementation of a full litigation hold to ensure

25  preservation of relevant documents is required.  *Apple Inc.*, 888 F. Supp. 2d at 991-

26  92.

27          Here, there is no real dispute a litigation hold was warranted, as CDCR's

28

10

1   Office of Legal Affairs in fact issued such a hold to the Litigation Coordinator of

2   CIW on June 17, 2011.  Huang Decl., Sealed Ex. R.  The deposition testimony of

3   Litigation Coordinator Rodger Moore supports this finding, as he indicated he was

4   aware of a litigation hold imposed in this case.  *Id.*, Ex. E at 17.  This was

5   sufficient to alert defendants to a potential claim involving plaintiff Ramos, and to

6   trigger their duty to preserve relevant documents.  Defendants do not argue against

7   this date.

8           Thus, the court finds CIW/CDCR's duty to preserve attached at least as of

9   June 17, 2011, and CIW/CDCR was in fact on notice of this duty by that date.

10                 **b.**     **Spoliation of Evidence**

11           The question remains whether CIW's actions resulted in the actual spoliation

12   of evidence.  "Spoliation is the destruction or significant alteration of evidence, or

13   the failure to preserve property for another's use as evidence in pending or

14   reasonably foreseeable litigation."  *Compass Bank*, 104 F. Supp. 3d at 1051-52

15   (citing *Kitsap Physicians Serv.*, 314 F.3d at 1001).  "[T]he applicable standard of

16   proof for spoliation in the Ninth Circuit appears to be by a preponderance of the

17   evidence."  *Id.* at 1052-53 (citations omitted).

18           Here, it is more likely than not that CIW/CDCR's failure to preserve

19   Garcia's personnel file deprived plaintiffs of evidence relevant to a party's claim or

20   defense.  *See* Fed. R. Civ. P. 26(b) (defining the scope of discovery).  Plaintiffs

21   have established that at least the Dickinson Letter should have been, and likely

22   was, in Garcia's personnel file.  Although plaintiffs ultimately obtained the letter,

23   they obtained it only after a years-long delay due to both the file's destruction and

24   Garcia's failure to produce it when first requested.  To date, no one has been able

25   to state why Garcia was terminated, including Jay Virbel, the purported person

26   most knowledgeable about Garcia's termination.  It is reasonable to assume

27   Garcia's personnel file would at least have shed some light on that matter.

28

1    Moreover, there have been hints in discovery that Garcia may have been

2    scrutinized for mishandling sexual misconduct cases and other matters, and

3    documents relating to these issues also may have been in the personnel file.

4    Without the file, the parties are left to speculate regarding its contents.

5            Furthermore, the destruction of Garcia's personnel file was not an

6    unavoidable accident.  Although CDCR properly imposed a litigation hold, it failed

7    to take appropriate steps to carry it out.  Rebecca Denton, CIW's Custodian of

8    Records, was unaware of the hold, likely because no litigation hold memorandum

9    was at the front of Garcia's personnel file as it should have been.  *See* Huang Decl.,

10   Ex. O at 13-15.  By failing to notify the appropriate records personnel of the hold,

11   the hold was meaningless.  That Garcia's personnel file was likely shredded in

12   March 2014 after plaintiffs had already served CIW with a subpoena for the file is

13   particularly egregious.

14                   c.      **Imputing Non-Party CIW/CDCR's Spoliation onto Garcia**

15           The question next arises as to whether CIW/CDCR's spoliation of Garcia's

16   personnel file can be imputed onto Garcia and the other defendants.  A non-party's

17   spoliation of evidence may be imputed to a party who did not engage in spoliation.

18   *See Gemsa Enterprises, LLC v. Specialty Foods of Alabama, Inc.*, 2015 WL

19   12746220, at *9 (C.D. Cal. Feb. 10, 2015) (quoting *Pettit v. Smith*, 45 F. Supp. 3d

20   1099 (D. Ariz. 2014) (internal quotations omitted)).  *Pettit* provides an instructive

21   case to follow, as it too was a prisoner's rights case where the non-party prison lost

22   or destroyed evidence.  The court stated there was "strong reason to impute" the

23   prison's loss of evidence to defendants "to ensure that fairness is done at trial."  *Id.*

24   at 1110 (imputing culpability of breach of duty to defendants, though deciding

25   against imposing case-dispositive sanctions); *see also Muhammad v. Mathena*,

26   2016 WL 8116155, at *7-8 (W.D. Va. Dec. 12, 2016) (finding "imputation of

27   [non-party institution's] negligent spoliation to the Defendants is necessary here in

28

                                              12

1   order to avoid unfair prejudice to [plaintiff]").

2          In *Pettit*, non-party Arizona Department of Corrections ("ADC") was

3   responsible for the loss or destruction of evidence despite having a duty to

4   preserve.  The court imputed the duty onto defendants because ADC was not a

5   disinterested party; it controlled the evidence and who had access to it, and the

6   state defended the case and would pay any judgment since its employees were sued

7   for actions while in the state's employ.  *Pettit*, 45 F. Supp. 3d at 1106, 1110-11

8   (granting adverse inference sanction in part).  Similarly here, CIW/CDCR was an

9   interested third party that controlled Garcia's personnel file and had access to it,

10  and it is also providing Garcia's legal defense.  Defendants acknowledge that

11  CDCR would be expected to pay any compensatory damages judgment against

12  Garcia, but note that under California Government Code § 825 there is no

13  guarantee CDCR would pay a punitive damages award against Garcia.  Opp. at 24.

14  The court finds the possibility of a punitive damages award against Garcia is

15  insufficient to make it unfair to impute the spoliation to Garcia.

16         Defendants cite to *Adkins v. Wolever*, 692 F.3d 499, 505 (6th Cir. 2012),

17  which affirmed an order denying an adverse inference instruction due to video

18  evidence lost by the non-party prison in question, because the defendant prison

19  guard "had no culpability for the loss of the surveillance video."  In *Adkins*, unlike

20  here, the evidence may have been lost before plaintiff even filed his complaint.  *Id.*

21  at 506.  Nevertheless, defendants are correct to note that, like the defendant in

22  *Adkins*, Garcia was not involved in the actual failure to preserve his personnel file.

23  But unlike the video in *Adkins*, the spoliation of the personnel file here does not

24  stand in isolation.  As discussed below, Garcia effectively concealed for years the

25  one surviving document from his personnel file by failing to properly search for it

26  while misrepresenting to plaintiffs and the court that he had conducted a diligent

27  search.  And as also discussed below, although Garcia may not have actually

28

13

1   misrepresented the circumstances of his separation from employment at CIW, he

2   certainly took advantage of plaintiffs' lack of documentary evidence to be less than

3   forthcoming in his initial deposition testimony.  Under these circumstances, Garcia

4   cannot be said to be personally blameless in this matter.

5        As discussed above, non-party CIW/CDCR's duty to preserve evidence

6   arose on June 17, 2011.  The court finds CIW's actions, which occurred at a time

7   when CIW had control over relevant evidence and a duty to preserve it, were at a

8   minimum acts of gross negligence resulting in spoliation.  *See Surowiec v. Capital*

9   *Title Agency, Inc.*, 790 F. Supp. 2d 997, 1005 (D. Ariz. 2001).  Having found

10  spoliation of Garcia's personnel file, it is within the court's inherent power to

11  impose sanctions.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S. Ct. 2123,

12  115 L. Ed. 2d 27 (1991); *Unigard Sec. Ins. Co.*, 982 F.2d at 368.  CIW's spoliation

13  of Garcia's personnel file and breach of duty to preserve evidence may be imputed

14  onto Garcia to avoid unfair prejudice to plaintiffs.  *See Adkins*, 692 F.3d at 506

15  (although not ordering an adverse inference instruction under the facts of the case,

16  recognizing that plaintiff had a "justifiable concern" that, because the prison itself

17  is not subject to suit under the Eleventh Amendment, failure to impose a spoliation

18  sanction would give the prison "an incentive to destroy evidence that is damaging

19  to its employee's case").

20       The court therefore concludes the spoliation of Garcia's personnel file is

21  sanctionable conduct.  As discussed below, the court recommends remedies

22  including an adverse inference jury instruction and monetary sanctions.

23       **2.    Garcia's Initial Inadequate Search and Misrepresentations**

24              **Regarding His Personnel File**

25       Next, the court considers whether Garcia's initial responses to plaintiffs'

26  requests for documents from his personnel file were inadequate or

27  misrepresentative.

28

                                        14

1    When plaintiffs first requested the personnel files of Garcia and others from

2  defendants, Garcia's written responses stated he had conducted a "diligent search"

3  but the requested documents were not in his possession, custody, or control.

4  Huang Decl., Ex. A at 5.  In response to plaintiffs' motion to compel defendants to

5  produce their personnel files and other documents, Garcia and the other defendants

6  represented to the court that the personnel files were not in their "possession,

7  custody or control."  Docket no. 70 at 32.  And in his November 2014 deposition,

8  Garcia denied having "any portions" of his personnel file in his possession.  *Id.*,

9  Ex. D at 14.

10    Plaintiffs served their pertinent discovery requests on Garcia in June 2013,

11  but only in September 2016 did Garcia produce the Dickinson Letter.  The

12  Dickinson Letter was, as Garcia acknowledged, marked as copied to his personnel

13  file, and it was CDCR's notice to Garcia that he was to be terminated from his

14  position as CIW Warden.  Garcia found and produced the Dickinson Letter only

15  after a number of revelations in discovery in the state case regarding the

16  circumstances of his separation from employment, including Frank Esqueda's June

17  2016 testimony that Garcia was involuntarily terminated, and Jay Virbel's August

18  2016 testimony that he had been the one to notify Garcia of his termination from

19  the Warden position.

20    Garcia explains the three-year delay in production by claiming he mistakenly

21  believed he did not possess any personnel file documents, but only came upon the

22  letter when he was asked and searched for documents relating to his termination

23  during the state action discovery.  Garcia Decl. ¶¶ 2-3.  Garcia states he "did not

24  have this document in my mind back in 2014 when I was asked whether I had a

25  copy of my personnel file."  *Id.* ¶ 3.  The court finds Garcia's explanation

26  plausible.  Nonetheless, even if true, it does not excuse his failure to conduct a

27  diligent search in response to plaintiffs' discovery requests in 2013, as Garcia

28

15

represented he had done.  Garcia admitted in his state deposition that, besides possessing his copy of the letter, he was also aware that this letter was likely a part of his personnel file.  Huang Decl., Ex. N at 8.  This wholly undermines Garcia's assertion that he diligently searched and made a reasonable inquiry for any personnel file documents in his possession, custody, or control.

It is suspicious that Garcia failed to produce his copy of the Dickinson Letter for over three years, particularly after his personnel file was destroyed.  That Garcia produced the letter to plaintiffs in September 2016 is in his favor, although as noted, by then Virbel had already testified to Garcia's involuntary termination from the Warden position.  But in any event, there is no excuse for Garcia's failure to conduct an adequate and diligent initial search when he was first served with the document requests, particularly in light of his representations to plaintiffs and the court that he had done so.  Garcia's statements to the court were not truthful in this regard, although perhaps not deliberately so.  Whether deliberate or not, Garcia's search was wholly inadequate and is sanctionable, as are his misstatements to the court and plaintiffs.

### 3. Alleged Misrepresentations to the Court and to Plaintiffs Regarding Garcia's Separation from CIW

The court next considers whether Garcia and his counsel made misrepresentations to the court and to plaintiffs in his discovery responses and court filings relating to the reasons for his removal from his position as CIW Warden.

As recounted above, Garcia testified at his November 2014 deposition that he voluntarily retired, but stated "[i]t was not a voluntary removal from office." Huang Decl., Ex. D at 7.  Garcia also provided a declaration to the court in his motion for summary judgment stating he retired from his position as CIW Warden. Docket no. 112-5 ¶ 1.  And defendants' counsel, David Taglienti, signed the

1    memorandum in support of the summary judgment motion, which stated that

2    Garcia retired as CIW Warden in March 2013.  Docket no. 112-1 at 15.  Plaintiffs

3    argue these were misrepresentations because Garcia had actually been involuntarily

4    terminated on February 28, 2013 based on the Dickinson Letter and Garcia's

5    meeting with Virbel.  Mtn. at 14-17.

6         Plaintiffs contend Garcia misrepresented or concealed that he was actually

7    terminated because of his alleged mishandling of the sexual misconduct allegations

8    raised by plaintiffs against defendant Gary Swatzell, as well as other named

9    defendants.  *Id.* at 22-23.  Plaintiffs cite the deposition testimony of Lieutenant

10   Frank Esqueda, who indicated Garcia's replacement as Warden, Tamara Kabban-

11   Miller, ordered a reevaluation of sexual misconduct cases that arose during

12   Garcia's term.  *See* Huang Decl., Ex. F at 2-24; Sealed Ex. S at 4.  Plaintiffs also

13   cite as evidence testimony from Rodger Moore that Garcia's separation was sudden

14   and unexpected, and that defense counsel Taglienti instructed Moore not to answer

15   a question regarding whether Garcia was accused of misconduct at the time of his

16   departure from CIW.  *Id.*, Ex. E at 6-7.  Additionally, Garcia appeared to contest

17   his removal by writing a letter to the Governor, copying numerous elected officials,

18   and filing an appeal, in which he asserted he had been unjustly terminated as

19   Warden and forced to retire.  *Id.*, Exs. K, L.

20        As indicated above, Garcia's terse deposition testimony that he retired –

21   which was given after his personnel file had been shredded, and during the period

22   Garcia effectively concealed the Dickinson Letter through his failure to search for

23   responsive documents – was less than forthcoming.  All of the evidence plaintiffs

24   cite may be used to construct an argument that Garcia was trying to conceal the

25   fact that he had been notified he was being involuntarily terminated from his

26   position as Warden.

27        But the court does not find Garcia's deposition testimony was actually

28

1   untruthful.  As defendants point out, when asked whether his departure from CIW

2   was voluntary, Garcia did not simply respond in the affirmative, or even simply

3   respond that his retirement was voluntary.  He stated "it was a voluntary

4   retirement.  It was not a voluntary removal from office."  Huang Decl., Ex. D at 7.

5   While this response is somewhat opaque to one not well versed in CDCR

6   employment rules and lingo, it did in fact acknowledge that his removal from his

7   position as Warden was involuntary.  Plaintiffs' counsel had an opportunity to

8   follow up with questions about what Garcia meant with this statement but failed to

9   do so.

10          Likewise, the court finds no misrepresentation in defendants' summary

11   judgment papers on this matter.  Although Garcia apparently felt he was forced

12   into an earlier-than-planned retirement, it was nonetheless his choice to retire

13   rather than be demoted, and the documentary evidence reflects that CDCR treated

14   Garcia's separation as a retirement.  There was therefore nothing untruthful in

15   Garcia's declaration in support of summary judgment that he retired in March

16   2013, or in defendants' memorandum stating the same.  Plaintiffs argue this

17   assertion was misleading; however, both times it was made it was in the context of

18   simply introducing Garcia and establishing the time and nature of his employment

19   at CIW.  There was no emphasis made on the assertion that he retired rather than

20   being involuntarily terminated.  While Garcia could have been more forthcoming,

21   the court finds these were not clear misrepresentations, much less

22   misrepresentations that would warrant sanctions.

23          That said, this does not mean plaintiffs should be prevented from using the

24   evidence recounted here to try to impeach Garcia's credibility at trial, so long as

25   they are permitted to do so within the parameters set by the trial judge.  And

26   although the court is not persuaded that plaintiffs have at his juncture conclusively

27   established that Garcia was terminated due to his mishandling of sexual

28

1 misconduct allegations, they will be given leave to conduct additional discovery as

2 to why Garcia was to be terminated as Warden, as discussed below and in the

3 accompanying minute order.

4    **4.**  **CIW/CDCR's Alleged Failure to Follow a Court Order to**

5       **Produce Personnel and Supervisory Files**

6    Lastly, plaintiffs argue sanctions are warranted for CIW/CDCR's

7 misrepresentations and/or concealment of evidence, in violation of the court's

8 August 6, 2014 order, relating to Garcia's personnel and supervisory files.

9    After plaintiffs presented their concern that CIW/CDCR may not have

10 conducted a thorough search for responsive documents relating to Garcia's

11 personnel and supervisory files, on August 6, 2014, the court issued an order

12 granting plaintiffs' motion to compel further responses and document production

13 in response to plaintiffs' subpoenas.  Among other things, that order required

14 CIW/CDCR to serve supplemental, verified responses affirming that they

15 conducted a diligent search and all responsive documents in their possession,

16 custody, and control have been produced.  Docket no. 86.  CIW/CDCR did so, and

17 produced the personnel files of all named defendants except Garcia.  Huang Decl.,

18 Ex. B at 2; Ex. C at 2.

19    Plaintiffs urge the court to sanction defendants because there is evidence of

20 concealed documents that have now been brought to light.  As discussed above, the

21 Dickinson Letter likely would have been a part of Garcia's personnel file.  *See*

22 Huang Decl., Ex. N at 8.  The other evidence plaintiffs cite pertains to an alleged

23 counseling memorandum Garcia received for "his dishonesty during a criminal or

24 administrative investigation."  *See* Huang Decl., Ex. D at 8-11; Sealed Ex. U at 2,

25 20-21.  Plaintiffs rely on deposition testimony from Rebecca Denton and defendant

26 Luis Flores to support the claim that counseling records against employees are kept

27 in a supervisory file, though it may also be part of the employee's personnel file.

28

1    *Id.*, Ex. AA at 2; Ex. BB at 2.

2       Taking Garcia's personnel file first, the evidence shows that Garcia's

3 personnel file was shredded, as discussed above, but there is no evidence showing

4 CIW/CDCR or any defendant destroyed the file intentionally. Had it not been

5 destroyed, the Dickinson Letter almost certainly would have been produced as part

6 of the file, perhaps along with counseling records. The sanctionable conduct with

7 respect to this file, however, has already been addressed above, that is, the failure

8 to take proper steps to preserve the file.

9       The alleged concealment of Garcia's supervisory file is another matter. In

10 August 2016, Jay Virbel testified he kept a supervisory file on Garcia that

11 contained the "February 28th" document – presumably referring to the February

12 28, 2013 memo produced from Garcia's supervisory file in the state action in July

13 2016. *See* Huang Decl., Sealed Ex. T at 15-16; Huang Reply Decl., Sealed Ex. FF

14 at 1, 22. Virbel said he had no investigatory documents for Garcia, but did not

15 clearly indicate if he believed there were other documents in the file. Huang Decl.,

16 Sealed Ex. T at 16-17.

17       Even if the February 28th memo were the only document Virbel kept in his

18 supervisory file on Garcia, the record clearly shows CDCR failed to comply with

19 the court's August 6, 2014 order. That order required CDCR to produce all the

20 named defendants' supervisory files, including those for Garcia, Horigan, and

21 Maldonado. Docket no. 86 at 5; *see* docket no. 80-21 at 6. In CDCR's

22 supplemental responses – which were verified by CDCR's Office of Internal

23 Affairs ("OIA") litigation coordinator for this case on September 5, 2014 – CDCR

24 represented that all responsive documents from defendants' supervisory files had

25 been produced. Huang Decl., Ex. C at 2, 5. Yet almost two years later, defendants

26 produced documents from the supervisory files of Garcia, Horigan, and Maldonado

27 in the state case. Huang Reply Decl., Sealed Ex. FF. Plaintiffs do not say whether

28

1  the documents in Horigan's and Maldonado's files had previously been produced,

2  but plaintiffs' counsel does declare no documents from Garcia's supervisory file

3  had previously been produced.  Huang Reply Decl. ¶ 15.  CDCR's failure to

4  comply with the court's August 6, 2014 order to produce supervisory file

5  documents, and its misrepresentation to plaintiffs and the court that all such

6  documents were produced, is sanctionable.

7         The sole document produced from Garcia's supervisory file to date, the

8  February 28 memo announcing Garcia's decision to retire, is of little material value

9  to this case.  But plaintiffs argue there should have been additional documents in

10 Garcia's supervisory file, and surmise defendants have concealed those additional

11 documents.

12        Plaintiffs focus on evidence that Garcia was counseled as a result of the OIA

13 investigation, and the lack of production of any records of that counseling.  Garcia

14 was involved in an OIA investigation relating to Sergeant Scott Legeman's

15 falsification of drug testing results at CIW.  *See* Huang Decl., Sealed Ex. U.  As

16 part of that investigation, it was alleged that Warden Garcia neglected to take

17 action against Correctional Lieutenant Hugo Padilla after Padilla admitted to

18 Garcia that Padilla knew about Legeman's misconduct but failed to report it for

19 three months.  *Id.* at 2.  It was further alleged that when interviewed about this

20 matter by OIA in December 2011, Garcia made false or misleading statements

21 about what Padilla told him.  *Id.*  The OIA files indicate Garcia was alleged to have

22 been dishonest during an investigative interview in December 2011.  *Id.* at 2.  The

23 Case Activity Report reflects that this dishonesty allegation against Garcia was

24 added to the OIA report in May 2012, and "any corrective and/or disciplinary

25 action" was deemed completed as to the entire investigation later that month.  *Id.* at

26 20-21.  It does not reflect whether any such action was taken against Garcia.

27 Defendants state that in September 2014 they produced 935 pages of investigative

28

21

1  documents relating to Legeman's OIA matter, which they assert is the "complete

2  file on that case."  Opp. at 12; Taglienti Decl. ¶¶ 31- 35.

3       Garcia admitted in deposition testimony that he was counseled as a result of

4  the OIA Legeman investigation.  Huang Decl., Ex. D at 11.  He stated he does not

5  know if the counseling was documented in his personnel file, but believes it would

6  not have been because the counseling was not "adverse."  *Id.*; Garcia Decl. ¶ 7.

7  Garcia admitted in a later deposition that this counseling was likely done in

8  writing, but maintained his assertion it would not have been put in his personnel

9  file.  Huang Reply Decl., Ex. CC at 5.

10       As evidence that Garcia's supervisory file would have contained records of

11  his counseling, plaintiffs point to Virbel's testimony that he maintained a

12  supervisory file for Garcia and such files contain investigation requests, although

13  Virbel then stated "there was nothing like that that I have for" Garcia.  Huang

14  Decl., Sealed Ex. T at 15-17.  Plaintiffs also point to the deposition testimony of

15  Luis Flores and Rebecca Denton that in their experience records of employees'

16  counseling are kept in their supervisory files.  Huang Reply Decl., Ex. AA at 2; Ex.

17  BB at 2.

18       On this record, the court finds plaintiffs have failed to show Garcia's

19  supervisory file ever contained anything more than the February 28, 2013

20  memorandum produced in the state action.  Although Flores and Denton's

21  testimony indicates some supervisory files contained counseling records, they did

22  not see supervisory files kept for wardens.  Flores was a correctional sergeant, and

23  Denton was a personnel officer who, among other things, served as records

24  custodian.  Indeed, Denton made clear in her testimony about what supervisory

25  files contain that she was speaking only of her own supervisory files for her

26  employees.  *Id.*, Ex. BB at 2.  Further, Virbel testified he did not inherit a

27  supervisory file for Garcia from his predecessor, Deborah Herndon (Huang Decl.,

28

1   Sealed Ex. T at 17), and Garcia's counseling on the Legeman investigation would
2   have occurred not later than May 2012, several months before Virbel began
3   supervising Garcia.  Virbel also testified he knew of no documents relating to
4   disciplinary action against Garcia.  Baxter Decl., Ex. A at 4

5          Nevertheless, there is a legitimate question as to whether there were
6   additional documents in Garcia's supervisory file that CDCR has failed to produce.
7   Although Virbel indicated the February 28, 2013 memorandum was in his
8   supervisory file for Garcia, and that investigative documents were not, he did not
9   actually testify that the February 28th memorandum was the only document in the
10  file.  *See* Huang Decl., Sealed Ex. T at 16-17.  Further, since Virbel testified that if
11  he were to give someone a formal letter he would keep that in their file (*see id.* at
12  16), it is curious that the Dickinson Letter, which Virbel gave to Garcia, was
13  apparently not produced in the state action as from the Garcia supervisory file.
14  Whether additional documents from the file ever existed and have not been
15  produced is a matter plaintiffs may explore in further discovery.  It is also possible
16  – although no evidence has been presented – that there were additional supervisory
17  files on Garcia created by his supervisors prior to Virbel.  Whether any such files
18  ever existed, and whether they were maintained by CDCR, is also a matter
19  plaintiffs may explore in discovery.

20         For now, however, the court finds the only sanctionable conduct plaintiffs
21  have established regarding Garcia's supervisory file is CDCR's failure to produce
22  all documents from that file as ordered by this court on August 6, 2014, and its
23  misrepresentations to plaintiffs and the court that it had produced all such
24  documents when it in fact had not.  The court thus turns to the questions of what
25  sanctions are warranted, and under what authority.

26
27
28

1    **B.     The Court May Sanction Defendants Under Rule 37 and Its Inherent**
2    **Authority**

3        **1.     Rule 37**

4        Rule 37 of the Federal Rules of Civil Procedure provides for sanctions for

5    failure to obey a discovery order.[3]  Fed. R. Civ. P. 37(b)(2).  These sanctions may

6    include, inter alia, directing that established facts be taken as established,

7    prohibiting the disobedient party from supporting or opposing designated claims or

8    defenses or from introducing designated matters in evidence, and payment of fees

9    and expenses caused by the discovery violation.  *Id.*  As discussed further below,

10   the court finds monetary sanctions under Rule 37 are warranted for violation of the

11   court's August 6, 2014 order.

12       **2.     Inherent Court Powers**

13       "In the context of spoliation of evidence, the Ninth Circuit has 'confirmed

14   the power of the district court to sanction under its inherent powers not only for

15   bad faith, but also for willfulness or fault by the offending party.'"  *Knickerbocker*

16   *v. Corinthian Colleges*, 298 F.R.D. 670, 678 (W.D. Wash. 2014) (quoting *Unigard*

17   *Sec. Ins. Co.*, 982 F.2d at 368 n.2 (citing *Halaco Eng'g Co.*, 843 F.2d at 380)).

18   "Before awarding sanctions under its inherent powers, however, the court must

19   make an explicit finding that counsel's conduct 'constituted or was tantamount to

20   bad faith.'"  *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir.

21   1997) (citation omitted).  Furthermore, the offending "party's motive or degree of

22   fault in destroying evidence is relevant to what sanction, if any, is imposed."

23   *Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 264 F.R.D. 517 (N.D. Cal.

24

25       [3]     Rule 37 provides for sanctions against a party for discovery violations.  CIW
26   and CDCR are not parties to this action; however, as discussed above, their
     discovery violations may be imputed to defendants here.  Accordingly, CDCR's
27   violation of the court's August 6, 2014 order to produce supervisory files may
28   result in sanctions against defendants under Rule 37.

1   2009) (citing *Baliotis v. McNeil*, 870 F. Supp. 1285, 1291 (M.D. Pa. 1994).

2       CIW/CDCR failed to institute a proper litigation hold to preserve Garcia's

3   personnel file, and this gross negligence led to spoliation of evidence.  Garcia also

4   made misrepresentations to the court and to plaintiffs regarding his discovery

5   responses, some of which have had the effect of prejudicing plaintiffs' discovery

6   efforts for over three years.  The failure to produce Garcia's supervisory file when

7   ordered similarly prejudiced plaintiffs.  The court finds these actions "tantamount

8   to bad faith."  *See Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767, 100 S. Ct. 2455,

9   65 L. Ed. 2d 488 (1980).

10       Accordingly, the court may sanction defendants under its inherent powers

11  for all of this conduct.  Precisely what those sanctions should be is discussed

12  below.

13       **3.    Rule 11**

14       Although requested by plaintiffs, sanctions are not warranted under Federal

15  Rule of Civil Procedure 11(d).  Rule 11 permits sanctions against a party and his or

16  her counsel for filing papers that are (1) legally or factually baseless from an

17  objective perspective; and (2) demonstrate counsel's lack of a reasonable and

18  competent inquiry before signing and filing the document.  Fed. R. Civ. P 11(b);

19  *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002).  "Rule 11 imposes

20  an affirmative duty of investigation both as to law and as to fact before a paper is

21  filed with the court."  *Refac Intern., Ltd. v. Hitachi Ltd.*, 141 F.R.D. 281, 287 (C.D.

22  Cal. 1991) (citation omitted).

23       As set forth above, the court has found Garcia's statements that he retired do

24  not constitute a clear misrepresentation of facts.  Thus, the court does not find that

25  it was a baseless or frivolous contention.  *See Christian*, 286 F.3d at 1127 (Rule 11

26  sanctions aim to "reduce frivolous claims, defenses, or motions and to deter costly

27  meritless maneuvers, thereby avoiding delay and unnecessary expense in

28

1  litigation") (internal quotation omitted).

2       **4.    28 U.S.C. § 1927**

3       The court also finds sanctions pursuant to 28 U.S.C. § 1927 are not

4  warranted at this time.  Sanctions pursuant to § 1927 are warranted against an

5  attorney "who so multiplies the proceedings in any case unreasonably and

6  vexatiously."  28 U.S.C. § 1927; *see also Quintana v. Baca*, 232 F.R.D. 631, 632

7  (C.D. Cal. 2005).  Section 1927 sanctions require a showing of "bad faith,

8  improper motive, or reckless disregard of the duty owed to the court."  *Edwards v.*

9  *Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998).

10      Because Garcia's assertion that he retired was technically correct, although

11 possibly misleading, the court does not find defense counsel acted with bad faith,

12 improper motive, or reckless disregard of duty to the court in asserting that Garcia

13 retired from his position at CIW, particularly given that, as discussed above, that

14 Garcia retired in March 2013 was asserted in the summary judgment motion as a

15 matter of placing Garcia in context and time, not as a key point.  The court also

16 accepts Taglienti's declaration that he neither contributed to, nor had knowledge

17 of, Garcia's possession of portions of his personnel file or CIW/CDCR's apparent

18 spoliation of evidence.  *See* Taglienti Decl. ¶¶ 7, 13, 23, 42.  It may be that counsel

19 did not sufficiently impress upon his clients the need to look for responsive

20 documents, such as Garcia's supervisory file, but there is nothing in the record to

21 show that was the case.  Thus, sanctions under § 1927 are not warranted against

22 defense counsel.

23 **C.    Multiple Sanctions Are Warranted**

24      Plaintiffs ask for sanctions in the form of adverse inference instructions,

25 monetary penalties, and leave to conduct further discovery.  The court finds each

26 of these is warranted, although not necessarily to the extent requested by plaintiffs.

27

28

1        **1.      An Adverse Inference Jury Instruction Regarding the Spoliated**
2                 **Evidence Is Warranted**

3        Plaintiffs seek adverse inference jury instructions as the primary sanctions

4   against Garcia for the spoliation of his personnel file, his alleged

5   misrepresentations regarding his retirement status, his and CDCR's alleged

6   concealment of evidence, and the alleged mishandling of the sexual misconduct

7   cases that may have influenced his termination.  The court recommends an adverse

8   inference instruction be given only for the spoliation of Garcia's personnel file.

9   The court does not recommend instruction be given regarding Garcia's alleged

10  misrepresentation of the circumstances of his retirement, as it finds no clear

11  misrepresentation as discussed above.  The court also does not recommend any

12  instruction address Garcia's alleged mishandling of sexual misconduct cases,

13  including as the basis for his termination, as that also has not been clearly

14  established.  Finally, the court does not recommend any instruction be given that

15  would suggest Garcia or defendants concealed evidence that Garcia was counseled

16  for dishonesty in an OIA investigation, as plaintiffs have failed to show that was

17  the case.

18       "The Ninth Circuit has approved the use of adverse inferences as sanctions

19  for spoliation of evidence, but has not set forth a precise standard for determining

20  when such sanctions are appropriate." *Compass Bank*, 104 F. Supp. 3d at 1054.

21  Many courts in this circuit have adopted a multi-factor test developed in the

22  Second Circuit.  *Id.*  This test provides:

23           a party seeking an adverse inference instruction based on the

24           destruction of evidence must establish: (1) that the party having

25           control over the evidence had an obligation to preserve it at the time it

26           was destroyed; (2) that the records were destroyed with a culpable

27           state of mind; and (3) that the evidence was relevant to the party's

28

27

1        claim or defense such that a reasonable trier of fact could find that it

2        would support that claim or defense.

3  *Id.* (citing *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107

4  (2d Cir. 2002)).

5       As detailed above, plaintiffs have proved each of the three elements.

6  CIW/CDCR's duty to preserve evidence attached on June 17, 2011.  On that date,

7  CDCR's Office of Legal Affairs received notice of a litigation hold over plaintiff

8  Ramos's complaints.  Huang Decl., Sealed Ex. R.  Rodger Moore, Litigation

9  Coordinator for CIW, also testified he was aware of the litigation hold.  *Id.*, Ex. E

10  at 17-19.  But CIW/CDCR failed to properly implement a litigation hold and was

11  at least grossly negligent in the management of Garcia's personnel file, as

12  discussed above.  *See In re Napster, Inc.*, 462 F. Supp. 2d at 1074 (adverse

13  inference sanction available where Napster was at fault for failure to preserve

14  evidence, even if, at best, conduct was grossly negligent).  Indeed, since plaintiffs

15  first served CIW with a subpoena relating to the personnel files of named

16  defendants on February 24, 2014, CIW had time to retrieve the personnel file in

17  response to the subpoena even before the file was destroyed in March 2014.

18  Instead, as Rebecca Denton testified, she was not aware of a litigation hold, and the

19  file was accidentally shredded in March 2014 after it was selected for audit during

20  the prison's accreditation process.  Huang Decl., Ex. O at 13-15.  Defense counsel

21  Taglienti stated "there is no way to reproduce [Garcia's personnel file]."  Docket

22  no. 80-19.  Garcia's personnel file at a minimum most likely contained the

23  Dickinson Letter showing he was involuntarily terminated as Warden.  It may also

24  have contained evidence of reasons for his termination, including possible

25  documents regarding mishandling of sexual misconduct matters, and dishonesty in

26  the OIA investigation interview.  Thus, Garcia's personnel file was at least

27  somewhat, and possibly highly, relevant to plaintiff's claims.  A negative inference

28

1   is therefore warranted as to the spoliation of Garcia's personnel file.

2          Defendants argue an adverse inference jury instruction is not warranted for

3   the spoliation of Garcia's personnel file because it was caused by non-parties CIW

4   and CDCR.  Opp. at 23.  Defendants claim their innocence and state that "[t]here is

5   no evidence that Defendants had any control over the file or caused its loss."  *Id.*

6   The court disagrees that a non-party's acts cannot be imputed onto a named

7   defendant.  The court finds plaintiffs' reliance on *Pettit* to be persuasive, and the

8   *Adkins* case cited by defendants to be distinguishable, as discussed above.

9   Therefore, CIW/CDCR's breach of its duty to preserve evidence can be imputed to

10  Garcia for sanctionable conduct.  The court notes, however, the recommended

11  adverse inference instruction only mildly imputes Garcia, as it should make clear it

12  was CIW and not Garcia that destroyed the file.  *See Pettit*, 45 F. Supp. 3d at 1111

13  (noting in similar circumstances the instruction would mean prison's spoliation

14  would have "some negative consequences for Defendants at trial, [but would] not

15  impute spoliation to them").

16         "'[A]n adverse inference instruction can take many forms, again ranging in

17  degrees of harshness.'"  *Apple Inc.*, 881 F. Supp. 2d at 1150 (citation omitted).

18  The level of harshness should be commensurate with the egregiousness of the

19  conduct.  *Id.*  There are three levels of instructions generally considered: (1) "when

20  a spoliating party has acted willfully or in bad faith, the jury can be instructed that

21  certain facts are deemed admitted and must be accepted as true"; (2) "when a

22  spoliating party has acted willfully or recklessly, a court may impose a mandatory

23  presumption"; and (3) the least harsh instruction "permits (but does not require) a

24  jury to presume that the lost evidence is both relevant and favorable to the innocent

25  party."  *Id.* (citation omitted).

26         With respect to the evidence actually lost, the record reflects CIW/CDCR

27  acted with at least gross negligence, and may have recklessly disregarding its

28

obligation to preserve evidence, but did not necessarily act with deliberate intent. Nonetheless, given that CIW/CDCR did at least impose a litigation hold, however ineffectually, the court finds an instruction somewhere between the lower and middle levels is appropriate here.

Although the exact wording of the instruction may be determined at trial, the court recommends the instruction generally follow what plaintiffs suggest in their first requested instruction:

> CIW had a duty to preserve evidence in this case, including Mr. Garcia's personnel file.  CIW contends that it inadvertently destroyed Mr. Garcia's personnel file after plaintiffs requested a copy of the personnel file.  You may, but are not required to, presume that the lost evidence was both relevant and favorable to plaintiffs' case.  You also may consider, among other things, whether the evidence shows CIW intentionally destroyed Mr. Garcia's personnel file.

Regardless of the exact wording, the court recommends, first, that the instruction acknowledge that CIW/CDCR had a duty to preserve evidence relating to plaintiff Ramos's complaint.  Second, it should inform the jury that the absence of Garcia's personnel file resulted from CIW/CDCR's failure to preserve certain records. Third, it should instruct the jury that it may presume the lost evidence is relevant and favorable to plaintiffs.  Fourth, under the circumstances here in which Garcia's personnel file was not the only source of information regarding Garcia to be concealed for at least some period of time, the instruction should tell the jury it may consider whether CIW intentionally destroyed the documents.

The recommended instruction pertains only to the spoliation of Garcia's personnel file.  Although the court also finds Garcia's concealment of the Dickinson Letter until September 2016 and his misrepresentations in that regard, and CDCR's concealment of Garcia's supervisory file and its misrepresentations in

1   that regard, to all be sanctionable, the court does not find an adverse inference

2   instruction is warranted for any of this conduct.  Because the Dickinson Letter and

3   the memo in the supervisory file have since been produced, the prejudice to

4   plaintiffs' case has been largely mitigated.  Nonetheless, plaintiffs suffered delay

5   through these concealments and misrepresentations, along with additional

6   discovery expenses.  Thus, the court turns to other sanctions that are warranted.

7           **2.    Monetary Sanctions Are Appropriate**

8           Plaintiffs also seek monetary sanctions.  The court finds monetary sanctions

9   are warranted to remedy all of the sanctionable conduct discussed above, under

10  both Rule 37 and the court's inherent power.

11          "The discretion to impose sanctions for reckless or negligent misconduct

12  is as broad as the discretion which is accorded for imposition of sanctions where

13  the misconduct was deliberate and intentional."  *Gates Rubber Co. v. Bando Chem.*

14  *Indus., Ltd.*, 167 F.R.D. 90, 103 (D. Colo. 1996).  "[I]ssue-related sanctions [that]

15  are fundamentally remedial rather than punitive . . . can be imposed on a showing

16  that the sanctioned party resisted discovery by a preponderance of the evidence."

17  *Parsi v. Daioleslam*, 778 F.3d 116, 131 (D.C. Cir. 2015) (internal quotation marks

18  and citation omitted).  "The appropriateness of a particular sanction is primarily a

19  function of two variables: the facts presented and the court's purpose in penalizing

20  the errant party."  *Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 394 (1st Cir.

21  1990).

22          Pursuant to Rule 37(b), the court finds plaintiffs are entitled to monetary

23  sanctions in the form of attorney's fees and expenses for CDCR's failure to obey

24  the court's August 6, 2014 order to produce Garcia's supervisory file.  *See* Fed. R.

25  Civ. P. 37(b)(2)(C).  The court must order sanctions under Rule 37 unless CDCR's

26  failure to diligently search for and produce the supervisory file "was substantially

27  justified or other circumstances make an award of expenses unjust."  *Id.*; *see Pierce*

28

31

1   *v. Underwood*, 487 U.S. 552, 565, 108 S. Ct. 2541, 2550, 101 L. Ed. 2d 490 (1988)

2   (defining "substantially justified" as "justified to a degree that could satisfy a

3   reasonable person").  A "disobedient party," after failing to comply with a court

4   order, must "pay the reasonable expenses, including attorney's fees, caused by [its]

5   failure."  *Id.*  Defendants have offered no justification for CDCR's failure to

6   produce the file when ordered, or for its misrepresentations to the court and

7   plaintiffs that it had produced all such documents.

8          In addition, under the court's inherent authority, plaintiffs are entitled to

9   monetary sanctions due to Garcia's failure to adequately search for documents and

10  his subsequent misrepresentations to the court and to plaintiffs that he had searched

11  and had no documents from his personnel file.  *See Fink v. Gomez*, 239 F.3d 989,

12  993-94 (9th Cir. 2001) (reasoning "willful actions, including recklessness when

13  combined with an additional factor" can be "tantamount to bad faith" and justify

14  sanctions under the court's inherent powers).  Under its inherent powers, the court

15  retains the control necessary "'to manage [its] own affairs so as to achieve the

16  orderly and expeditious disposition of cases.'"  *Chambers*, 501 U.S. at 43 (quoting

17  *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31, 82 S. Ct. 1386, 8 L. Ed. 2d 734

18  (1962)).  Garcia's misrepresentations and failure to search effectively concealed

19  the Dickinson Letter for three years.  As a result, plaintiffs were deprived of the

20  document and the information therein that Garcia was involuntarily terminated as

21  Warden through numerous depositions, and plaintiffs have and continue to expend

22  time and money in discovery trying to get to the bottom of the reasons for Garcia's

23  termination.  Plaintiffs are therefore entitled to reimbursement of their fees and

24  costs incurred as a result of the concealment of the Dickinson Letter and delay in

25  its production.

26         And although CIW's spoliation of Garcia's personnel file is partly addressed

27  through the adverse inference instruction recommended above, the instruction does

28

1    nothing to remedy the expenses incurred by plaintiffs through their discovery

2    efforts to reconstruct Garcia's personnel file.  Thus, plaintiffs are also entitled to

3    reimbursement of their fees and expenses that can be traced to the spoliation of the

4    personnel file.  *See E.E.O.C. v. Fry's Elecs., Inc.*, 287 F.R.D. 655, 660 (W.D.

5    Wash. 2012) (awarding monetary sanctions "to offset the excess costs caused by

6    defendant's discovery violations, to punish unacceptable behavior, and as a

7    deterrent to future bad conduct.").

8          The amount of the sanctions can only be determined after submission of

9    further briefing by the parties regarding reasonable attorney's fees and costs

10   associated with Garcia's failure to thoroughly search for and produce responsive

11   personnel file documents, CIW/CDCR's failure to preserve documents placed

12   under a litigation hold, and CDCR's failure to produce documents relating to

13   Garcia's supervisory file.  Because plaintiffs discovery efforts in this regard are

14   ongoing, it is premature to set a deadline for plaintiffs to make such a submission.

15   But plaintiffs should be permitted, at a later date, to submit such briefing and

16   documentation, with defendants given an opportunity to respond.  In any such

17   submission, plaintiffs will need to demonstrate that the requested fees and expenses

18   are fairly traceable to the discovery violations found herein.  Such expenses may

19   include the cost to bring the instant motion.

20         **3.    Plaintiffs Also May Conduct Additional Discovery**

21         Because the court is recommending denial of plaintiffs' request for jury

22   instructions concerning the reasons for Garcia's termination, plaintiffs alternatively

23   request the court to allow them to take discovery to: uncover the reasons for

24   Garcia's termination as CIW Warden; determine whether CDCR produced

25   Garcia's entire supervisory file; determine whether there was a counseling

26   memorandum for Garcia that was or should have been included in Garcia's

27   supervisory file; and determine whether Garcia, Virbel, or CIW/CDCR possess the

28

1  above-stated counseling memorandum and supervisory file.  Mtn. at 24-25.

2  Plaintiffs seek the depositions of Jay Virbel, Deborah Herndon (Garcia's former

3  supervisor prior to Virbel), Kathleen Dickinson, Tamara Kabban-Miller (Garcia's

4  successor as CIW Warden), and the person most knowledgeable about sexual

5  misconduct cases that arose under Garcia's term as CIW Warden.  *Id.* at 25.

6       Pursuant to Federal Rule 37(b)(2)(A), the court may issue further just orders

7  if a party fails to provide or permit discovery.  Fed. R. Civ. P. 37(b)(2)(A).  The

8  court determines it would be just to order additional discovery into certain matters

9  in this case.  But there are limits to what the court can order, and limits to what the

10  court needs to order to allow plaintiffs to conduct this discovery.

11       Because the current discovery cutoff is September 4, 2017, there is no need

12  for the court to reopen discovery or extend the discovery cutoff.  As discussed at

13  the May 16, 2017 hearing on this motion, there is nothing to prevent plaintiffs from

14  simply taking much of the additional discovery they seek.  But to the extent

15  plaintiffs request specific orders from the court regarding discovery, the court will

16  address those requests in the concurrently filed minute order, as discovery is a

17  matter within the authority of the Magistrate Judge.

18  //

19  //

20

21

22

23

24

25

26

27

28

# IV.

## <u>RECOMMENDATION</u>

IT IS THEREFORE RECOMMENDED that the District Court issue an Order approving and accepting this Report and Recommendation, and ordering that plaintiffs' Motion for Sanctions (docket no. 182) be granted in part as follows:

1. The jury be given an adverse inference instruction concerning the spoliation of defendant Garcia's personnel file, in accordance with the parameters set forth above; and

2. Plaintiffs be granted monetary sanctions, in an amount to be determined at a later date by the Magistrate Judge after further submissions by the parties.

DATED: June 5, 2017

_____
SHERI PYM
United States Magistrate Judge

35